

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

NANETTE HUNTER, on behalf of herself, and all others similarly situated,

Plaintiff,

vs.

FIRST NATIONAL BANK OF OMAHA, NA,

Defendant.

CASE NO. 15-cv-808-H-NLS

**ORDER:**

**(1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; and**

**(2) STAYING ACTION PENDING ARBITRATION**

[Doc. No. 11]

On April 10, 2015, Plaintiff Nanette Hunter ("Plaintiff"), on behalf of herself and all others similarly situated, filed a complaint against Defendant First National Bank of Omaha, NA ("Defendant"). (Doc. No. 1.) On June 18, 2015, Defendant filed a motion to compel arbitration. (Doc. No. 11.) Plaintiff filed an opposition on July 20, 2015. (Doc. No. 12.) Defendant filed a reply on July 27, 2015. (Doc. No. 14.) On July 28, 2015, the Court submitted the motion on the parties' papers and vacated the hearing. (Doc. No. 16.) For the following reasons, the Court grants the motion to compel arbitration. The Court orders a limited stay of the proceedings.

/ / /

/ / /

/ / /

**Background**

Plaintiff's dispute arises out of phone calls made by Defendant for the purpose of collecting an alleged debt on a credit card she obtained from Defendant. (Doc. No. 1, "Compl."). Plaintiff applied by phone for a credit card from Defendant. (Doc. No. 11-2 at ¶ 5; Doc. No. 14-1 at ¶ 5; Doc. No. 14-2 at 5-15.) Plaintiff spoke with Edsel Cruz, a representative of Defendant ("Cruz"). (Doc. No. 14-1 at ¶ 5.) Plaintiff provided information regarding her application for a credit card. (Doc. No. 14-1 at 5-13.) Cruz explained several terms of the application to Plaintiff, including that "[y]ou agree to comply with the card member agreement that will be furnished if your application is approved." (Id. at 14 ll. 14-15.) Defendant later mailed monthly billing statements to Plaintiff that included a cardmember agreement. (Doc. No. 11-2, Mayo Declaration, at ¶ 6.)

Defendant attaches a document entitled "Cardmember Agreement" to its motion to compel arbitration. (Doc. No. 11-3.) The first page of the document states that the "booklet describes important terms and conditions that apply to your credit card account." (Id. at 1.) The second page of the agreement contains the following clause: "Using or allowing someone else to use your account means you accept the terms of the Agreement." (Id. at 2.) The subheading "Claims and Arbitration of disputes" appears on the first page of the document under the heading titled "Contents of this Cardmember Agreement." (Id. at 1.) The arbitration clause states, in relevant part:

> **14. Claims and Arbitration of disputes**
> *Arbitration is a process by which an impartial arbitrator resolves a dispute, instead of a court. This section explains which claims and disputes may be resolved by arbitration and the rules and limitations that apply in arbitration. This section also explains the treatment and limitation of claims.*
>
> ***"CLAIMS" AND RELATED DEFINED TERMS:*** When this Agreement refers to a "Claim" it means any pre-existing, present or future claim, dispute or controversy that arises from or in any way relates to: (a) this Agreement, any prior Cardmember Agreement, your credit card account, the credit we offer or deny to you in connection with your credit card account, any advertising or application for your credit card account, or the benefits, rewards or other products or services that are offered in connection with your credit card account; or (b) the acts or omissions of you, of us, or of Related Parties if those acts or omissions relate to your

> credit card account or any benefits, rewards or other products or services related to your credit card account. Claims include, but are not limited to claims based on contract and tort (including intentional torts), claims made in law or in equity, claims based on constitutional, statutory, regulatory and common law rights, and claims for damages, penalties and injunctive, declaratory or equitable relief. . . . Any Claim or Claims brought by or on behalf of a class, brought in a representative capacity or otherwise on a class basis, or brought in the form of a private attorney general action are referred to as "Class Proceedings" regardless of whether they are commenced in court or in arbitration.

(Id. at 7-8 [formatting in original].) The arbitration clause further states:

> ***ARBITRATION:***
> **THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**
> **PLEASE READ THE FOLLOWING PARAGRAPHS CAREFULLY.**
>
> **WITH LIMITED EXCEPTIONS, THIS ARBITRATION PROVISION ALLOWS EITHER PARTY TO REQUIRE THAT ANY "CLAIM" (AS DEFINED ABOVE) BE RESOLVED BY BINDING ARBITRATION.**
>
> **ARBITRATION REPLACES THE RIGHT TO GO TO COURT AND TO HAVE A CLAIM DETERMINED BY A JURY. OTHER RIGHTS YOU MAY HAVE IN COURT, SUCH AS DISCOVERY OR APPEAL RIGHTS, MAY NOT BE AVAILABLE OR MAY BE MORE LIMITED IN ARBITRATION. EXCEPT AS PROVIDED BELOW, THESE OTHER RIGHTS ARE WAIVED.**
>
> **YOU WILL NOT BE ABLE TO DO THESE TWO THINGS (IN COURT OR IN ARBITRATION): (1) BRING A CLAIM AS A CLASS ACTION OR IN A REPRESENTATIVE CAPACITY; OR (2) PARTICIPATE IN A CLAIM AS A CLASS MEMBER.**
>
> Except as provided below: (1) you may unilaterally choose to have any Claim that we bring against you resolved through binding arbitration; and (2) we may unilaterally choose to have any Claim that you bring against us (or us and any of Our Related Parties) resolved through binding arbitration. . . . **If a party chooses to have a Claim resolved by arbitration pursuant to this arbitration provision, neither you nor we will have the right to litigate that Claim in court, have a jury trial on that Claim, or engage in pre-arbitration discovery, except as provided for in the applicable Arbitration Rules of the selected Arbitrator(s) and as otherwise set forth in this arbitration provision.**

(Id. at 8.) The arbitration agreement excludes "Ordinary Claims" from compelled arbitration. The agreement defines "Ordinary Claims" as follows:

> A Claim will be considered an "Ordinary Claim" if all three of the following are true: (1) the only remedy being sought for the Claim is monetary damages; (2) the recovery being sought for the Claim is less than $25,000, excluding interest and costs; and (3) the only parties to litigation to resolve the Claim will be you, us, and/or Related Parties.

(Id.) The agreement also contains a class action waiver. (Id.)

On April 10, 2015, Plaintiff filed a class action complaint against Defendant, alleging causes of action for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 et seq. and the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 632.7 et seq. (Doc. No. 1.) Plaintiff alleges that she received unsolicited phone calls to her cellular telephone from a number owned and operated by Defendant on multiple occasions in early 2015. (Doc. No. 1, Compl. at ¶¶ 13-14.) Plaintiff claims that the calls concerned an attempt to collect an alleged debt. (Id. at ¶ 13.)

By the present motion, Defendant moves to dismiss or stay this action and compel arbitration of Plaintiff's claims pursuant to an agreement. (Doc. No. 11.) In response, Plaintiff contends that the arbitration provision in the Cardmember Agreement is not a valid contract, that her claims are outside the scope of the arbitration agreement, and that the arbitration agreement is unconscionable. (Doc. No. 12.) For the following reasons, the Court grants the motion to compel arbitration. The Court orders a limited stay of the case pending arbitration proceedings.

## Discussion

### I. Legal Standards

The Federal Arbitration Act ("FAA") provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has explained that the FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." KPMG LLP v. Cocchi, 132 S. Ct. 23, 25 (2011); see also AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (stating that the FAA reflects a "'liberal federal policy favoring arbitration agreements.'"). Under the FAA, federal courts are required to rigorously enforce an agreement to arbitrate. See AT&T Mobility, 131 S. Ct. at 1745-46; Perry

v. Thomas, 482 U.S. 483, 490 (1987). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

"The court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). In determining the existence of an agreement to arbitrate, courts look to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996); see also Rent-A-Center, West, Inc., v. Jackson, 561 U.S. 63, 67 (2010) ("[A]rbitration is a matter of contract."). In addition, courts resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1989).

## II. Analysis

### A. A Valid Agreement to Arbitrate Exists

The Court first determines whether a valid agreement to arbitrate exists. Chiron Corp., 207 F.3d at 1130. Defendant has presented evidence showing that Plaintiff entered into a credit agreement containing an arbitration clause. Plaintiff applied for a credit card from Defendant over the phone. (Doc. No. 11-2 at ¶ 5; Doc. No. 14-1 at ¶ 5; Doc. No. 14-2 at 5-15.) During that phone conversation, Plaintiff provided information to support her application for the credit card. (Doc. No. 14-1 at 5-13.) Defendant's representative highlighted terms of the application and informed Plaintiff that a condition of receiving the card is that "[she] agree to comply with the card member agreement that will be furnished if [her] application is approved." (Id. at 14 ll. 14-15.) Cruz also explained that the exchange of information over the phone "completes the application process" and that Plaintiff would receive information

"regarding the status of [her] application" by mail. (Id. at ll. 21-23.)

Defendant later mailed monthly billing statements to Plaintiff that included the cardmember agreement. (Doc. No. 11-2, Mayo Declaration, at ¶ 6.) The agreement provides that "Using or allowing someone else to use your account means you accept the terms of the Agreement." (Doc. No. 11-3 at 2.) Moreover, Defendant provides evidence that the credit card is affixed to a copy of the cardmember agreement and that Plaintiff would have to physically remove the card from that agreement to activate the card. (Doc. No. 14-1, Mayo Declaration, ¶ 7.) The agreement, reproduced in relevant part above, is clear and unambiguous. Plaintiff's assertions that she never saw the agreement are not persuasive.

Moreover, the arbitration clause is not unconscionable. California law favors enforcement of valid arbitration agreements. Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal. 4th 83, 97 (2000). Enforcing the arbitration provisions under these circumstances is not unconscionable. The cardmember agreement provides clear notice of its arbitration provisions on the first page of the agreement. (Doc. No. 11-3 at 1.) The arbitration provision itself contains a distinctive, capitalized, bold statement that under certain circumstances,

> **ARBITRATION REPLACES THE RIGHT TO GO TO COURT AND TO HAVE A CLAIM DETERMINED BY A JURY. OTHER RIGHTS YOU MAY HAVE IN COURT, SUCH AS DISCOVERY OR APPEAL RIGHTS, MAY NOT BE AVAILABLE OR MAY BE MORE LIMITED IN ARBITRATION. EXCEPT AS PROVIDED BELOW, THESE OTHER RIGHTS ARE WAIVED.**

(Id. at 8 [formatting in original].)

Furthermore, this is a case where the plaintiff attempts to use class action claims under the TCPA to challenge a company's debt collection phone calls. This is not a situation where a defendant might be using an arbitration provision to defend fraud or other actions intended to cheat consumers out of individually small claims. Under these circumstances, having weighed the competing public policies at issue, the Court concludes that Plaintiff has not met her burden, and it will not disturb the terms of the

agreement. See Higgins v. Superior Court, 140 Cal. App. 4th 1238, 1249 (2006) (imposing burden of proving unconscionability on party opposing arbitration). Accordingly, the Court concludes that a valid agreement to arbitrate exists.

**B. The Agreement Encompasses the Dispute At Issue**

Because "arbitration is a matter of contract," United Steelworkers of Am., 363 U.S. at 582, the Court next determines "whether the agreement encompasses the dispute at issue." Chiron Corp., 207 F.3d at 1130. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses, 460 U.S. at 24-25. The arbitration provision in the cardmember agreement provides that the following claims are subject to arbitration:

> [A]ny pre-existing, present or future claim, dispute or controversy that arises from or in any way relates to: (a) this Agreement, any prior Cardmember Agreement, your credit card account, the credit we offer or deny to you in connection with your credit card account, any advertising or application for your credit card account, or the benefits, rewards or other produces or services that are offered in connection with your credit card account; or (b) the acts or omissions of you, of us, or of Related Parties if those acts or omissions relate to your credit card account or any benefits, rewards or other products or services related to your credit card account.

(Doc. No. 11-3 at 7-8.) Plaintiff's complaint arises out of phone calls to her cellular telephone by Defendant concerning an attempt to collect an alleged debt owed on the credit card she obtained from Defendant. (See Doc. No. 1, Compl.) Defendant's phone calls regarding the debt allegedly owed on Plaintiff's credit card are "acts" that "relate to [Plaintiff's] credit card account." (See Doc. No. 11-3 at 7-8.) Accordingly, on the record before the Court and in light of the presumption in favor of arbitration, Plaintiff's claims fall within the scope of the arbitration clause.

Plaintiff argues that her claims are not subject to arbitration because they fall within the exception for "Ordinary Claims." (Doc. No. 12 at 11-12.) The arbitration provision in the cardmember agreement excludes "Ordinary Claims" from compelled arbitration. (Doc. No. 11-3 at 8.) The agreement defines "Ordinary Claims" as follows:

> A Claim will be considered an "Ordinary Claim" if all three of the following are true: (1) the only remedy being sought for the Claim is monetary damages; (2) the recovery being sought for the Claim is less than $25,000, excluding interest and costs; and (3) the only parties to litigation to resolve the Claim will be you, us, and/or Related Parties.

(Id.) Under the agreement, a court may determine whether a claim is an Ordinary Claim. (Id. at 9.) Here, Plaintiff alleges that she seeks "damages, injunctive relief, and any other available legal or equitable remedies" against Defendant for alleged violations of the TCPA and CIPA. (Doc. No. 1, Compl. at ¶ 1.) Plaintiff later repeats that she seeks "damages and injunctive relief for recovery of economic injury . . . ." (Id. at ¶ 32.) And Plaintiff specifically seeks "statutory damages . . . and injunctive relief" for the alleged CIPA violations. (Id. at ¶ 41.) The arbitration clause is unambiguous in its definition of an Ordinary Claim; to qualify under the Ordinary Claim exception, the plaintiff must seek only monetary damages. (Doc. No. 11-3 at 8.) But Plaintiff seeks injunctive relief in addition to monetary damages. And Plaintiff is "the master of [her] complaint." Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1106 (9th Cir. 2000). Accordingly, Plaintiff's claim is not expressly excluded by the arbitration agreement.

Plaintiff also contends that her claims under the TCPA are not arbitrable. (Doc. No. 12 at 12-20.) Plaintiff's claims for violations of the TCPA are based on allegations that Defendant repeatedly called Plaintiff in an effort to collect on a past-due balance. (Doc. No. 1, Compl. ¶¶ 13-14.) The arbitration clause includes "claims based on contract and tort (including intentional torts)" and "claims based on constitutional, statutory, regulatory and common law rights." (Doc. No. 11-3 at 8.) On the facts before the Court, Plaintiff's TCPA claims are subject to the arbitration provision contained in the credit agreement. See, e.g., McNamara v. Royal Bank of Scot. Group, PLC, 2012 U.S. Dist. LEXIS 158580 (S.D. Cal. Nov. 5, 2012) (finding plaintiff's claims for violation of the TCPA were subject to arbitration based on an arbitration provision contained in a Credit Card Agreement); Knutson v. Sirius XM Radio Inc., 2012 U.S. Dist. LEXIS 75698 (S.D. Cal. May 31, 2012) (finding plaintiff's claims for

violation of the TCPA were subject to arbitration based on an arbitration provision contained in a Customer Agreement).

**Conclusion**

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration. The parties must proceed with Plaintiff's claims via arbitration in accordance with the terms of the agreement. The Court stays this action for six months, at which time the Court may inquire into the status of the arbitration. The Court reserves the right to dismiss the action.

**IT IS SO ORDERED.**

DATED: July 31, 2015

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT